T.C. Summary Opinion 2006-60

UNITED STATES TAX COURT

EMMANUEL AND CECILIA ABLOSO, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 898-04S.          Filed April 19, 2006.

Emmanuel and Cecilia Abloso, pro se.

Guy Glaser, Kim-Khanh Thi Nguyen, and Sherri S. Wilder,
for respondent.

CARLUZZO, Special Trial Judge:  This case for the
redetermination of a deficiency was heard pursuant to the
provisions of section 7463 of the Internal Revenue Code in effect
at the time the petition was filed.  Unless otherwise indicated,
subsequent section references are to the Internal Revenue Code in
effect for 2000.  Rule references are to the Tax Court Rules of

Practice and Procedure. The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

Respondent determined a deficiency of $3,177 in petitioners' 2000 Federal income tax and imposed a $635.40 section 6662(a) accuracy-related penalty. The issues for decision are: (1) Whether petitioners are entitled to various deductions claimed on a Schedule C, Profit or Loss From Business, included with their 2000 joint Federal income tax return; and (2) whether the underpayment of tax required to be shown on petitioners' 2000 return is due to negligence or intentional disregard of rules or regulations.

Background

Some of the facts have been stipulated and are so found. At the time the petition was filed, petitioners resided in Fontana, California. References to petitioner are to Emmanuel Abloso.

For most of the year in issue, petitioner was employed full time by ANVICOM. Petitioner worked "at least 40 hours a week" there and earned wages of $43,741.

In 1999, petitioner attended a seminar conducted by Renaissance TTP, Inc. (Renaissance). Renaissance sometimes refers to itself in its publications as "The Tax People". Renaissance developed and marketed "The Tax Relief System" (TRS), a program designed to provide tax products and services targeted

primarily to individuals operating home-based businesses. Petitioner received TRS materials from Renaissance that stated, in part: "the smartest plan of action for any taxpayer" was to use TRS "along with [the taxpayer's] existing home business." The TRS materials also stated that an individual could "start a home business by declaring you are in business" that would "turn most of your everyday expenses into business expenses."

The TRS materials provided to petitioner by Renaissance include discussions titled "Maximize Your Home Business Deductions", "Maximize Your Business Vehicle Deductions", "Maximize Your Travel Deductions", "Maximize Your Entertainment Deductions", and "Hire Your Children to Realize BIG Tax Savings". These TRS materials also include the "W-4 Exemption Increase Estimator" that Renaissance claimed would provide an "immediate cash benefit" and "increase [a taxpayer's] take-home pay by hundreds of dollars" by adjusting his or her current deductions on the Form W-4, Employee's Withholding Allowance Certificate.

In addition, Renaissance guaranteed that individuals who use TRS would generate "a minimum of $5,000 in [F]ederal income tax deductions for the first twelve (12) months you operate your home business". Individuals who participated in TSA could also choose to participate in Renaissance's Pre-Paid Tax Advantage (PTA) system. PTA offered participants, in part, unlimited tax

consultation, unlimited audit protection, and free tax return preparation.

Typically, individuals purchased the TRS materials and PTA services for a $300 downpayment and monthly payments of $100. Through TRS, a participant could receive a "bonus" from Renaissance for sponsoring participants who joined TRS and/or purchased TRS materials, although the manner in which the bonus is computed is less than clear from the Renaissance materials. The Renaissance program also provided a participant with a "bonus" on the "downline" sponsorships of other individuals who joined TRS.

Petitioner completed an application and became a participant in TRS "towards the end of 1999." Prior to that time, petitioner had not been engaged in any home-based business activity. Despite the fact that some of the materials provided by Renaissance were, according to petitioner, "difficult for the ordinary man to understand", petitioners did not seek independent tax or legal advice relating to participating in the program. As required by his TRS membership, petitioner made monthly payments of $100 to Renaissance throughout the 2000. Petitioner also purchased various products from Renaissance, including audiotapes, record-keeping materials, and catalogs.

During 2000, petitioner "sponsored" approximately 29 individuals, predominantly friends and relatives, as TRS participants. For his referrals, petitioner earned "bonuses" from Renaissance which totaled $2,914 during 2000.

For the most part, petitioner conducted his TRS activities in the dining room of petitioners' residence. Petitioner did not maintain any separate books or records with regard to the TRS activity other than mileage logs and petitioners' monthly bank statements. Cecilia Abloso, who was employed as nurse during 2000, did not participate in the TRS program.

Petitioner terminated his involvement with the TRS program at the end of 2000 when he discovered that Renaissance was involved in a dispute with the Internal Revenue Service.

Petitioners filed a timely joint 2000 Federal income tax return. An accountant at ANVICOM is listed as the paid preparer of that return. Included with that return is a Schedule C related to petitioner's participation in TRS. The Schedule C shows a net loss of $14,205. The loss takes into account the following expense deductions:

| | |
|---|---|
| Advertising | $896 |
| Car and truck expenses | 3,189 |
| Office expense | 120 |
| Rent or lease | |
|   Vehicles and equipment | 6,480 |
| Supplies | 413 |
| Meals and entertainment | 114 |
| Utilities | 180 |
| Other expense | 5,727 |
|   Total | 17,119 |

The rent or lease expense was based primarily on petitioners'
monthly rent of $550 for their personal residence.

In the notice of deficiency, respondent disallowed the
Schedule C deductions claimed by petitioners.  However, to the
extent of the income realized from the activity, respondent
allowed certain of these expenses as miscellaneous itemized
deductions.[1]  Respondent further determined that petitioners are
liable for an accuracy-related penalty under section 6662(a).

Discussion

In general, section 162(a) allows a deduction for all
ordinary and necessary expenses paid or incurred during the
taxable year in carrying on a trade or business.  The term "trade
or business" is not precisely defined in the Internal Revenue
Code or the regulations promulgated thereunder; however, it is
well established that in order for an activity to be considered a
taxpayer's trade or business for purposes of section 162, the
activity must be conducted "with continuity and regularity", and
"the taxpayer's primary purpose for engaging in the activity must
be for income or profit."  Commissioner v. Groetzinger, 480 U.S.
23, 35 (1987).  Personal, living, or family expenses may not be
deducted.  Sec. 262(a).

---

[1]  However, as the expenses allowed as itemized deductions
are less than the standard deduction, the deficiency here in
dispute takes into account the standard deduction.

According to petitioners, petitioner's participation in the TRS program constituted a trade or business within the meaning of section 162, and the deductions claimed on the Schedule C should be allowed.  According to respondent, petitioner's participation in the TRS program did not constitute a trade or business and, with minor exceptions, the expenses shown on the Schedule C are not otherwise deductible.[2]  For the following reasons, we agree with respondent.

Petitioners bear the burden of proving that:  (1) Petitioner's participation in the TRS program constituted a trade or business within the meaning of section 162(a) during 2000; (2) the expenses underlying the deductions here in dispute were ordinary and necessary to that trade or business; and (3) the expenses were paid or incurred.[3]  Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Welch v. Helvering, 290 U.S. 111 (1933).

After attending a seminar conducted by Renaissance, petitioner submitted an application to participate in TRS.  As an active TRS participant, petitioner was required to pay a monthly

---

[2]  At trial, respondent conceded that the "bonuses" of $2,914 petitioner received from Renaissance were not includable in petitioners' income.

[3]  Under the circumstances, the burden of proof remains with petitioners in this case.  See sec. 7491.

fee of $100. In exchange, petitioner received a variety of tax-related products, services, and advice from Renaissance. Neither petitioner nor Cecilia Abloso was otherwise engaged in any home-based business during 2000. In essence, petitioner did little more than pay a monthly membership fee to TRS for generally misleading or ill-advised tax products and services. Petitioner's participation in the TRS program hardly constitutes a trade or business within the meaning of section 162(a).[4] Petitioners are not entitled to the Schedule C deductions claimed on their 2000 return, and respondent's disallowances of those deductions are sustained.

Respondent also determined that the underpayment of tax required to be shown on petitioners' 2000 return is due to negligence or disregard of rules or regulations and imposed an accuracy-related penalty under section 6662(a).[5]

Negligence is defined to include any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code. It also includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly. Sec. 6662(c); see also 1.6662-3(b)(1), Income Tax

---

[4] We further note that petitioners failed to substantiate any of the claimed Schedule C expenses other than petitioner's monthly payments to Renaissance.

[5] Sec. 7491(c) places the burden of production on respondent with respect to this penalty.

Regs. Section 1.6662-3(b)(1), Income Tax Regs., provides that negligence is strongly indicated where "A taxpayer fails to make a reasonable attempt to ascertain the correctness of a deduction, credit or exclusion on a return which would seem to a reasonable and prudent person to be 'too good to be true' under the circumstances". "Disregard" has been described as any careless, reckless, or intentional disregard. Sec. 6662(c).

Section 6664(c)(1) provides that the penalty under section 6662(a) shall not apply to any portion of an underpayment if it is shown that there was reasonable cause for the taxpayer's position with respect to that portion and that the taxpayer acted in good faith with respect to that portion. The determination of whether a taxpayer acted with reasonable cause and in good faith within the meaning of section 6664(c)(1) is made on a case-by-case basis, taking into account all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. The most important factor is the extent of the taxpayer's effort to assess his proper tax liability for the year. Id. Section 1.6664-4(b)(1), Income Tax Regs, specifically provides: "Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of * * * the experience, knowledge, and education of the taxpayer." See Neely v. Commissioner, 85 T.C. 934 (1985).

Petitioners' backgrounds have not been made part of the

record.  From their presentation at trial, the Court can understand how they, or petitioner, might have been misled by statements made by the promoters of the TRS program and statements contained in the Renaissance materials.  However, we cannot excuse petitioners' failure to substantiate many, if not most of the deductions claimed on the Schedule C.  See sec. 1.6662-3(b)(1), Income Tax Regs.  Respondent's imposition of the section 6662(a) penalty is appropriate in this case, and we so find.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing and concessions by respondent,

Decision will be entered
under Rule 155.